**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>        v.<br><br>Ángel Ayala Vázquez [4]<br><br>    Defendant. | Criminal Case. NO. 11-045 (PG) |

<u>**OPINION AND ORDER**</u>

Before the Court is Defendant's motion to dismiss (Docket No. 66). Therein, Defendant requests that this Court dismiss the indictment pursuant to the Double Jeopardy Clause of the Fifth Amendment. For the reasons stated below, this Court **DENIES** Defendant's request.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

In Count Two of the Indictment of criminal case 09-173 (PG), defendant Angel Ayala-Vazquez (hereinafter "Ayala-Vazquez" or "Defendant") was charged with conspiracy to import narcotics into Puerto Rico from February 2007 until February 2008. In said case Defendant's co-conspirators were Jose Hernandez-Torres ("Lanza") and Jose Negron-Rivera ("Nino Brown"). Evidence presented at trial demonstrated how Ayala-Vazquez along with said co-conspirators reached an agreement with an undercover DEA agent to import a drug shipment totaling 100 kilograms into Puerto Rico from the Dominican Republic. Defendant was ultimately convicted of said offense.

Defendant was then charged in the above-captioned case with conspiring to import five kilograms or more of cocaine and one kilogram or more of heroin into Puerto Rico from the Dominican Republic from on or about March 2005 until on or about July 2009. <u>See</u> Docket No. 1. The co-

conspirators in this case include Elvin Torres Estrada ("Muñecon"), Rafael Santiago Martinez ("Pica") and Samuel Negron Hernandez ("Sammy Toston"). The co-conspirators charged in the case at hand were also charged in 09-173 (PG), however, they were not charged in Count Two as part of the conspiracy to import cocaine into Puerto Rico.[1]

Defendant has now filed a motion to dismiss the indictment alleging that the Double Jeopardy Clause of the Fifth Amendment prohibits the Government from prosecuting him twice for the same offense, namely, conspiring to import cocaine into Puerto Rico See Docket No. 66. Defendant claims that both Count Two in case 09-173 (PG) and Count One in 11-045 (PG) charge him with the same offense with the same elements, and thus, the Double Jeopardy Clause bars the Government from prosecuting him again on those grounds. The Defendant also alludes to the double jeopardy standard set forth in Blockburger v. United States, 284 U.S. 299 (1932).

Finally, the Defendant asserts that in 09-173 (PG), the jury was never instructed to only consider the evidence stemming from the testimony of cooperator Jose Marrero Martel, and agents Jose Ralat, Juan Clemente Andino and Felipe Rivera Rivera, which gave rise to the conspiracy charge in Count Two of the Indictment. Consequently, the Defendant alleges that to the extent the jury took into account this testimony to convict the Defendant of Count Two in 09-173 (PG), then proceeding with the prosecution in this case would be a violation of Defendant's Fifth Amendment right. See Docket No. 66.[2]

The Government then filed a response in opposition to Defendant's motion to dismiss (Docket No. 80). Therein, the Government argues that

---

[1] Defendants charged in Count Two of 09-173 (PG) were Angel Ayala Vazquez, Jose Negron Rivera and Jose Hernandez Torres.
[2] The Court finds Defendant's base assertion and argument incomprehensible and will thus refrain from discussing its merits herein.

"although both Indictments charge conspiracies involving efforts to import narcotics … during an overlapping period of time, they are not the same conspiracy." Docket No. 80 at p. #3. To support these allegations, the Government claims that the identities of the co-conspirators, their ends and means used to achieve those ends, as well as the evidence presented to prove the two conspiracies differ.

## II. DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment protects against a second prosecution for the same offense after acquittal, after conviction and also protects against multiple punishments for the same offense. U.S.C.A. CONST. AMEND. V. Furthermore, the Double Jeopardy Clause prohibits the subdivision of a single criminal conspiracy into multiple violations of one conspiracy statute. See Baverman v. United States 317 U.S. 49 (1942). The test set forth in Blockburger has been habitually used by courts to determine whether indictments charge the same offense. The Blockburger or "same elements" test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." U.S. v. Dixon, 509 U.S. 688, 697 (1993).

Defendant argues that pursuant to this test, the Government is barred from prosecuting him on the grounds of conspiracy. However, Defendant fails to "recognize that the Blockburger test applies only where the same act or transaction constitutes a violation of two distinct statutory provisions…." U.S. v. Asher, 96 F.3d 270, 273 (7th Cir. 1996)(quoting Blockburger, 284 U.S. at 304). In addition, a strict Blockburger double jeopardy analysis has been rejected by federal courts when dealing with subsequent prosecutions and more than one conspiracy is

at issue. See U.S. v. Thomas, 759 F.2d 659 (8th Cir. 1985)(emphasis ours). Also, it has been held that the Blockburger test is of questionable value in conspiracy double jeopardy issues. Id. at 662. Accordingly, this Court finds that the Blockburger test is inapplicable to the case at hand.

Notwithstanding, the First Circuit Court carved a five-factor test for determining whether two conspiracy counts charge the same offense and therefore places the defendant in double jeopardy. Such factors include:

> 1) time periods of the conspiracies, with an overlap tending to support a single conspiracy; 2) the personnel involved, again with "significant overlap" denoting a single conspiracy; 3) location(s), with identical place(s) supporting a single conspiracy; 4) evidence of overt acts, where the same acts would denote a single conspiracy; and 5) statutory provisions, with the same statutes suggesting possible overlap.

U.S. v. Hart 933 F.2d 80, 85-86 (1St Cir. 1991); U.S. v. David, 940 F.2d 722, 734 (1st Cir. 1991). Other Circuit Courts of Appeals have established analogous tests. See U.S. v. Elgersma, 979 F.2d 750 (9th Cir. 1992); U.S. v. Thomas, 759 F.2d 659 (8th Cir. 1985). "These factors are guidelines only. The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object." U.S. v. Thomas, 759 F.2d at 663. All factors should be considered together because no single factor is determinative. See U.S. v. Delgado, 256 F.3d 264, 272 (5th Cir. 2001). When analyzing the factors, courts shall consider all evidence before them, including "evidence adduced at the previous trial, evidence expected to be presented at the second…." U.S. v. Thomas, 759 F.2d at 663.

With regards to the first factor, namely, the time period, courts have held: "[t]he fact that the two conspiracies overlap at times does

not prove that there was only one conspiracy." U.S. v. Thomas, 759 F.2d at 667. The time frame of the conspiracy charged in Count Two in 09-173 (February 2007 to February 2008) is entirely contained within the time frame of Count One in 11-045 (March 2005 to July 2009). In cases alike, courts have found that "where the smaller conspiracy is charged first, there is not the same opportunity for prosecutorial abuse, and the overlap of time is therefore a less important consideration." U.S. v. Macchia, 35 F.3d 662, at 669 (2nd Cir. 1994). Accordingly, this Court finds that even though there is an overlap in time frames between both conspiracies, this does not bar a finding of separate conspiracies. Most importantly, the conspiracy charged in Count One of 11-045 continued for more than a year after the one charged in Count Two of 09-173 had ended[3]. This last allegation in the indictment is demonstrative that there were in fact two separate conspiracies in which the Defendant participated.

In considering the second factor, the identities of the persons involved, this Court find no "significant overlap" denoting a single conspiracy. First and foremost, the members of the conspiracy charged in 09-173 included Jose Hernandez-Torres, Jose Negron-Rivera, and Ayala-Vazquez. On the other hand, the co-conspirators charged in the above-captioned case include Elvin Torres Estrada, Rafael Santiago Martinez, Samuel Negron Hernandez and Ayala-Vazquez. Accordingly, except for the Defendant, the parties named in each indictment were completely different.

The third prong of the test is location. Both conspiracies involve the importation of cocaine into the customs territory of Puerto Rico. However, this factor by itself is not indicative of the existence of a

---

[3] The conspiracy charged in Count 2 of 09-173 (PG) ended in February 2008, while the conspiracy charged in Count 1 of 11-045 (PG) lasted until July 2009.

single conspiracy. Accordingly, federal courts have found that it is possible for more than one conspiracy to exist in the same metropolitan area. See U.S. v. Mallah, 503 F.2d 971 (2nd Cir. 1974)(finding that the New York metropolitan area was large enough to harbor two simultaneous narcotics conspiracies); U.S. v. Dortch, 5 F.3d 1056 (7th Cir. 1993)(finding that the greater St. Louis area is certainly large enough to be home to more than one conspiracy to distribute cocaine).

    The fourth factor is the evidence of overt acts, where the same acts would denote a single conspiracy. The acts giving rise to the 09-173 conspiracy involved an agreement between the Defendant, his co-conspirators and an undercover DEA agent to import a drug shipment totaling 100 kilograms into Puerto Rico from the Dominican Republic. With regards to the 11-045 Indictment, the Government emphasizes that evidence to be presented at trial includes both the <u>importation of cocaine and heroin</u> quantities into Puerto Rico, as well as the "subsequent transportation of cocaine from Puerto Rico to the Continental United States…," See Docket No. 80 at page 5, whereas evidence presented in case 09-173 as part of the conspiracy charge was limited to the importation of cocaine into Puerto Rico. Even though both conspiracies have a geographic overlap, evidence to be presented in 11-045 (PG) includes the U.S. Mainland. When analyzing this factor, courts have determined that "[w]hile similar in nature to the extent that each conspiracy dealt with cocaine deals, the evidence presented… revealed different transactions in different places with different people." U.S. v. Hart, 933 F.2d at 86. After considering these facts, the Court understands that the acts that gave rise to both conspiracy charges have little, if any correlation other than they both involved cocaine importation.

With regards to the fifth and final factor, namely the statutory provisions, both indictments charge conspiracy to import narcotics into the customs territory of the United States pursuant to 21 U.S.C. § 963. Although there is similarity at this general level, it is immaterial to the case at hand. As courts have noted before, "it is possible to have two different conspiracies to commit exactly the same type of crime." U.S. v. Okolie, 3 F.3d 287, 290 (8th Cir. 1993)(quoting U.S. v. Thomas, 759 F.2d at 666). Accordingly, this Court finds that while both Indictments charge the same offense, under the same statute, the Defendant took part in different conspiracies in order to commit the same crime. In addition, this Court finds that "the overlap of statutory provisions for each count does not belie the separateness of the conspiracies established by the first four factors." U.S. v. Hart, 933 F.2d at 86.

Upon careful review, this Court finds that the acts giving rise to the two separate conspiracy charges differ from one another. After analyzing the multi-factor test carved by the First Circuit, this Court finds that the two conspiracy counts against defendant Ayala-Vazquez are in fact two separate schemes to import cocaine into the territory of Puerto Rico. Accordingly, this Court **DENIES** Defendant's motion to dismiss (Docket No. 66).

### IV. CONCLUSION

In light of the aforementioned, this Court hereby **DENIES** Defendant's motion to dismiss (Docket No. 66) on Double Jeopardy grounds.

**SO ORDERED.**

In San Juan, Puerto Rico, October 17th, 2012.

S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE